640 So.2d 183 (1994)
Heidi PATE and James Pate, her husband, Appellants,
v.
James B. THRELKEL, M.D.; James B. Threlkel, M.D., P.A.; Gessler Clinic, P.A.; Shands Teaching Hospital & Clinics, Inc.; and Florida Board of Regents, Appellees.
No. 92-2776.
District Court of Appeal of Florida, First District.
August 1, 1994.
Nolan Carter, of Nolan Carter, P.A., Orlando, for appellants.
J. Brent Jones, of Hannah, Marsee, Beik & Voght, P.A., Orlando, for appellees/Threlkel and Gessler Clinic.
Francis E. Pierce, III, of Gurney & Handley, P.A., Orlando, for appellees/Shands and the Florida Bd. of Regents.
SHIVERS, Senior Judge.
Appellants bring this appeal from an order dismissing their complaint with prejudice on the basis that they were not patients of the appellees/defendants and did not fit within any exception to the requirement that there be a physician/patient relationship as a condition precedent to bringing a cause of action for medical malpractice. The specific issue raised is whether a physician has a duty to the children of a patient with a genetically transferrable disease to warn that patient of the hereditary nature of the disease in order that the patient's children can be tested to determine if they have inherited the disease and need immediate treatment. We affirm.
Appellants filed a complaint in March 1987 alleging that appellee Dr. James Threlkel performed surgery on Marianne New, the mother of appellant Heidi Pate, for medullary thyroid carcinoma; that as a cardiovascular surgeon, Dr. Threlkel knew of or should have known of the likelihood that Mrs. New's children would have inherited this condition genetically; that Dr. Threlkel was under a duty to warn Mrs. New of the importance of testing her children for medullary thyroid carcinoma due to its genetic transferability; that had Dr. Threlkel so warned Mrs. New, her children would have been tested at that time; and that had she been tested in 1987, Heidi Pate's condition would have, more likely than not, been curable and she would have taken preventative action before she developed significant medullary thyroid cancer. The complaint went on to allege that as a direct and proximate result of Dr. Threlkel's negligence, Heidi Pate suffers from advanced medullary thyroid cancer which she discovered in 1990 and for which she has had to undergo surgery.[1] As a direct result, the allegations are that Heidi Pate has sustained advanced medullary thyroid cancer with resulting pain and suffering, the shortening of her life expectancy, scarring, numbness, disfigurement, disability, mental anguish, lost wages, medical expenses, *184 and loss of the capacity for the enjoyment of life.
Appellees subsequently moved to dismiss the complaint for failure to state a cause of action based upon appellants' failure to allege any duty on the part of appellees to Heidi Pate. The court agreed, finding that appellants "were not patients of the Defendants nor ... fit within any exception to the requirement that there be a physician/patient relationship established before bringing an action for medical malpractice."
On appeal, appellants initially address the general issue of whether a duty is owed by a physician to persons not within a physician/patient relationship for harm caused to those persons through the alleged negligence of the physician. Appellants urge that the decisions most analogous to the instant situation are those involving contagious diseases in which the physicians' duties were extended both to family members and to the public at large. For instance, in Hofmann v. Blackmon, 241 So.2d 752 (Fla. 4th DCA 1970), cert. denied, 245 So.2d 257 (Fla. 1971), suit was brought on behalf of a child who contracted tuberculosis from her father due to the negligence of the physician who had allegedly failed to timely diagnose the father's condition. In rejecting the argument that the physician owed no duty to the daughter since she was not his patient, the court stated:
It is recognized that once a contagious disease is known to exist a duty arises on the part of the physician to use reasonable care to advise and warn family members of the patient's immediate family of the existence and dangers of the disease. [Citations omitted].
241 So.2d at 753. The court then held:
[A] physician owes a duty to a minor child who is a member of the immediate family and living with a patient suffering from a contagious disease to inform those charged with the minor's well being of the nature of the contagious disease and the precautionary steps to be taken to prevent the child from contracting such disease and that the duty is not negated by the physician negligently failing to become aware of the presence of such a contagious disease.
Id.
Later, in Gill v. Hartford Accident & Indemnity Company, 337 So.2d 420 (Fla. 2d DCA 1976), the court extended the physician's liability beyond family members to patients in the same hospital room. There, the defendant/physician had failed to adequately safeguard the plaintiff from the physician's patient, who was the plaintiff's roommate, and who suffered from a highly contagious disease. The complaint therein alleged that the defendant/physician knew, or should have known, that the infection suffered by his patient was highly contagious but failed to undertake any steps to prevent the spread of that infection to the plaintiff, or failed to warn the plaintiff, thereby causing an unreasonable increase in the risk of injury to the plaintiff. After hearing, the trial court granted a motion to dismiss which was reversed on appeal, the appellate court holding that the complaint "does state a cause of action and alleges a duty and a breach of that duty." Id. at 421.[2]
Appellants concede that no Florida case has directly addressed the issue concerning a physician's duty to the children of a patient whom he diagnoses as suffering from a hereditary disease. However, they direct our attention to a New Jersey Supreme Court decision holding a number of pediatricians responsible for damages where it was shown their negligent acts led to a child's inheriting cystic fibrosis from the mother. In Schroeder v. Perkel, 87 N.J. 53, 432 A.2d 834 (1981), the Schroeders' daughter, Ann, was diagnosed at the age of four as having cystic fibrosis, a hereditary disease. The Schroeders were then tested and determined to be carriers of the cystic fibrosis gene. Mrs. Schroeder was at the time eight months pregnant, and, tragically, the baby was also ultimately diagnosed as having cystic fibrosis. Suit was brought against the various pediatricians for their failure to diagnose Ann's cystic fibrosis during the four years *185 she was their patient. The suit contended that the condition could have been diagnosed earlier, and had it been so, the Schroeders would have learned they were carriers of the cystic fibrosis gene in time to prevent the second pregnancy.
The pediatricians defended on the basis that they owed no duty to the Schroeders because the Schroeders were not their patients. However, in holding that the physicians did owe a duty to the Schroeders, and that they were taking "too myopic a view" of their responsibilities, the New Jersey Supreme Court observed that the "scope of duty in negligence, except as limited by policy considerations, is coextensive with the reasonable foreseeability of the consequences of a negligent act." 432 A.2d at 838. The court went on to hold in relevant part:
The foreseeability of injury to members of a family other than one immediately injured by the wrongdoing of another must be viewed in light of the legal relationships among family members. A family is woven of the fibers of life; if one strand is damaged, the whole structure may suffer. The filaments of family life, although individually spun, create a web of interconnected legal interests.
* * * * * *
A physician's duty thus may extend beyond the interests of a patient to members of the immediate family of the patient who may be adversely affected by a breach of that duty. Here, the physicians had not only a duty to Ann, but an independent duty to Mr. and Mrs. Schroeder to disclose to them that Ann suffered from cystic fibrosis. The wrong allegedly committed by defendants was the failure to disclose material information.
Id. at 839.
Appellees distinguish the above cited cases essentially on a single basis: the need for prevention. They argue that Hofmann and Gill involved an immediate need to take steps to prevent the spread of an infectious disease to certain narrowly-defined persons. In Schroeder, they maintain the duty was owed to the Schroeders to afford them the opportunity to prevent the birth of their second child. In contrast, they urge that in the present case there was no immediate need to prevent anything; there were no allegations that Heidi Pate's cancer would have been preventable.
In McCain v. Florida Power Corporation, 593 So.2d 500 (Fla. 1992), the Florida Supreme Court defined the duty element of negligence as follows: "The duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader `zone of risk' that poses a general threat of harm to others." Id. at 502. The court went on to observe that "Florida, like other jurisdictions, recognizes that a legal duty will arise whenever a human endeavor creates a generalized and foreseeable risk of harming others." Id. at 503 [footnote omitted]. It then reiterated an earlier holding that
[w]here a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses.
Id., quoting from Kaisner v. Kolb, 543 So.2d 732, 735 (Fla. 1989).
After a careful review, we are persuaded that Hofmann and Gill represent at this time the outer limits of a physician's duty. Instead, we feel constrained by the circumstances of this case and the law as it exists to hold that appellees' conduct in treating Marianne New did not create a foreseeable zone of risk encompassing Heidi Pate, and that the general rule of privity would apply to affirm the trial court's dismissal of the cause. In so ruling, we find analogous the analysis employed by the Third District Court of Appeal in Joseph v. Shafey, 580 So.2d 160 (Fla. 3d DCA 1990), rev. den., 592 So.2d 681 (Fla. 1991). Therein, Dr. Shafey, a neurologist, treated a City of Miami police officer for a pituitary gland tumor. The treatment included a craniotomy to remove the tumor. After the operation the officer experienced psychotic episodes and Dr. Shafey prescribed dosages of Thorazine, an anti-psychotic drug. Two months after the surgery Dr. Shafey informed the City that the officer could return to "full duty." Shortly thereafter, while on duty, the officer shot appellant Joseph, a *186 member of the public at large. Joseph brought an action against Dr. Shafey for medical malpractice and negligence. The trial court entered a summary judgment based on the lack of privity between appellant Joseph and Dr. Shafey and the failure to state a cause of action. The Third District, in affirming, wrote that:
In order to maintain a cause of action against Dr. Shafey, there must have existed privity between appellant and Dr. Shafey, and Dr. Shafey must have owed, and breached, a duty to appellant. Absent privity and a breach of duty, no cause of action lies.
Id. See also, Boynton v. Burglass, 590 So.2d 446 (Fla. 3d DCA 1991) (held that a psychiatrist owed no duty to the victim, the victim's family, or the police in a case where the psychiatrist treated an alleged violence-prone patient who ultimately harmed a third person).[3]
We conclude that the present state of the law in Florida requires we affirm the dismissal of the appellant's complaint for failure to state a cause of action due to the absence of privity and breach of duty.
However, because this case presents an issue of first impression in Florida, we certify to the Florida Supreme Court the following question as being one of great public importance:
DOES A PHYSICIAN OWE A DUTY OF CARE TO THE CHILDREN OF A PATIENT TO WARN THE PATIENT OF THE GENETICALLY TRANSFERRABLE NATURE OF THE CONDITION FOR WHICH THE PHYSICIAN IS TREATING THE PATIENT?
AFFIRMED.
ERVIN, J., concurs.
BOOTH, J., specially concurs.
BOOTH, Judge, specially concurring.
I agree with the result of this opinion.
NOTES
[1] The complaint makes similar allegations against Dr. Pfaff and Shands Teaching Hospital and Clinics, and includes two similar counts on behalf of Heidi Pate's husband, James Pate, for loss of consortium.
[2] For a more complete overview and analysis of this area of tort law see, Tracy A. Bateman, Annotation, Liability of Doctor or Other Health Practitioner to Third Party Contracting Contagious Disease From Doctor's Patient, 3 A.L.R. 5th 370 (1992).
[3] Appellees also rely on the Third District Court of Appeal's early decision in Greenwald v. Grayson, 189 So.2d 204 (Fla. 3d DCA 1966). Therein, the court affirmed a directed verdict entered in a medical malpractice claim noting that there was "no evidence of negligence on the part of the physician resulting in an injury to the patient. A physician-patient relationship did not exist between the parties to this action." Id. at 205. In Greenwald, the plaintiffs filed a two-count complaint against a physician alleging negligent performance of medical duties and a breach of contract concerning the physician's alleged erroneous advice given to the plaintiffs relating to the fitness of a child they were considering for adoption. Although the plaintiffs alleged that the physician committed medical malpractice by failing to recognize symptoms of a congenital disease, Greenwald was fundamentally a contract case. As such, we do not consider it fully apposite to the instant case.