661 So.2d 278 (1995)
Heidi PATE and James Pate, her husband, Petitioners,
v.
James B. THRELKEL, M.D.; James B. Threlkel, M.D., P.A.; Gessler Clinic, P.A.; Shands Teaching Hospital & Clinics, Inc.; and Florida Board of Regents, Respondents.
No. 84289.
Supreme Court of Florida.
July 20, 1995.
Rehearing Denied October 10, 1995.
*279 Nolan Carter of Law Offices of Nolan Carter, P.A., Orlando, for petitioners.
J. Brent Jones of Hannah, Marsee & Voght, P.A., Orlando; and Francis E. Pierce, III of Gurney & Handley, P.A., Orlando, for respondents.
WELLS, Justice.
We have for review the following question certified to be of great public importance:
DOES A PHYSICIAN OWE A DUTY OF CARE TO THE CHILDREN OF A PATIENT TO WARN THE PATIENT OF THE GENETICALLY TRANSFERABLE NATURE OF THE CONDITION FOR WHICH THE PHYSICIAN IS TREATING THE PATIENT?
Pate v. Threlkel, 640 So.2d 183, 186 (Fla. 1st DCA 1994). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer the question in the affirmative provided the children of the patient first establish that pursuant to the prevailing standard of care set forth in section 766.102, Florida Statutes (1989), a reasonably prudent physician would give such warning to his or her patient in light of all relevant circumstances.
In March 1987, Marianne New received treatment for medullary thyroid carcinoma, a genetically transferable disease. In 1990, Heidi Pate, New's adult daughter, learned that she also had medullary thyroid carcinoma. Consequently, Pate and her husband filed a complaint against the physicians who initially treated New for the disease as well as the physicians' respective employers. Pate and her husband alleged that the physicians knew or should have known of the likelihood that New's children would have inherited the condition genetically; that the physicians were under a duty to warn New that her children should be tested for the disease; that had New been warned in 1987, she would have had her children tested at that time; and if Pate had been tested in 1987, she would have taken preventative action, and her condition, more likely than not, would have been curable. Pate claimed that as a direct and proximate cause of the physicians' negligence, she suffers from advanced medullary thyroid carcinoma and its various damaging effects.[1]
The respondent health care providers moved to dismiss the complaint for failure to state a cause of action. Specifically, the respondents alleged that Pate did not demonstrate the existence of a professional relationship between her and respondents and thus failed to establish that respondents owed her a duty of care. The trial court granted the motion and dismissed the Pates' complaint with prejudice, finding that the plaintiffs were not patients of the respondents *280 and that they did not fit within any exception to the requirement that there be a physician-patient relationship between the parties as a condition precedent to bringing a medical malpractice action.
The district court affirmed the trial court's dismissal. The court rejected the Pates' argument that it should, based upon past decisions recognizing a doctor's duty to inform others of a patient's contagious disease,[2] extend a physician's duty to cover the child of a patient who suffers from an inheritable disease. The court also rejected the Pates' reliance on Schroeder v. Perkel, 87 N.J. 53, 432 A.2d 834 (1981), in which the parents of a four-year-old child brought suit against the child's pediatricians for failing to diagnose the child with cystic fibrosis early enough to prevent the parents from having a second diseased child. The New Jersey court in Schroeder recognized that due to the special nature of the family relationship, a physician's duty may extend beyond a patient to members of the patient's immediate family. Id. at 839.
In rejecting the Pates' claim, the district court focused upon the legal issue of duty. To define the concept of duty the court relied on our decision in McCain v. Florida Power Corp., 593 So.2d 500 (Fla. 1992). In McCain, we stated, "Florida, like other jurisdictions, recognizes that a legal duty will arise whenever a human endeavor creates a generalized and foreseeable risk of harming others." Id. at 503. A duty is thus established when the acts of a defendant in a particular case create a foreseeable zone of risk.[3] Having defined when a duty arises, we went on to state that "each defendant who creates a risk is required to exercise prudent foresight whenever others may be injured as a result." Id. Relying on McCain, the district court recognized the existence of a physician's duty. The court, however, declined to extend the boundaries of that duty to include Heidi Pate. Specifically, the court held, "we feel constrained by the circumstances of this case and the law as it exists to hold that appellees' conduct in treating Marianne New did not create a foreseeable zone of risk encompassing Heidi Pate, and that the general rule of privity would apply to affirm the trial court's dismissal of the cause." Pate, 640 So.2d at 185.
We agree with the district court's focus on duty. We conclude that to answer the certified question we must consider two questions related to duty. First, we must determine whether New's physicians had a duty to warn New of the genetically transferable nature of her disease. We find that to make this determination we must apply section 766.102, Florida Statutes (1989), which defines the legal duty owed by a health care provider in a medical malpractice case. That section provides in part:
(1) In any action for recovery of damages based on the death or personal injury of any person in which it is alleged that such death or injury resulted from the negligence of a health care provider as defined in s. 768.50(2)(b), the claimant shall have the burden of proving by the greater weight of evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider. The prevailing professional standard of care for a given health care provider shall be that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers.
§ 766.102, Fla. Stat. (1989). In applying this statute to the instant case, we conclude that a duty exists if the statutory standard of care requires a reasonably prudent health care provider to warn a patient of the genetically transferable nature of the condition for which the physician was treating the patient.
*281 In medical malpractice cases, the standard of care is determined by a consideration of expert testimony. Because this case comes to us on appeal from an order granting the physicians' motion to dismiss, the record has yet to be developed in respect to such testimony. However, the court's dismissal requires us to assume that the factual allegations in the complaint are true. Connolly v. Sebeco, Inc., 89 So.2d 482, 484 (Fla. 1956); Aaron v. Allstate Ins. Co., 559 So.2d 275, 276 (Fla. 4th DCA 1990), review denied, 569 So.2d 1278 (Fla. 1990); Thompson v. City of Jacksonville, 130 So.2d 105, 107 (Fla. 1st DCA 1961), cert. denied, 147 So.2d 530 (Fla. 1962). Accordingly, we must accept as true the Pates' allegations that pursuant to the prevailing standard of care, the health care providers were under a duty to warn New of the importance of testing her children for medullary thyroid carcinoma. Whether these allegations are supported by the statutorily required expert medical authority will have to be determined as the action progresses. We do note, however, that the plaintiffs have pled good-faith compliance with section 766.104, Florida Statutes (1989).[4]
The second question we must address in answering the certified question is to whom does the alleged duty to warn New of the nature of her disease run? The duty obviously runs to the patient who is in privity with the physician. In the past, courts have held that in order to maintain a cause of action against a physician, privity must exist between the plaintiff and the physician. See Joseph v. Shafey, 580 So.2d 160 (Fla. 3d DCA 1990), review denied, 592 So.2d 681 (Fla. 1991), Boynton v. Burglass, 590 So.2d 446 (Fla. 3d DCA 1991). In other professional relationships, however, we have recognized the rights of identified third party beneficiaries to recover from a professional because that party was the intended beneficiary of the prevailing standard of care. In such cases, we have determined that an absence of privity does not necessarily foreclose liability. Baskerville-Donovan Engineers, Inc. v. Pensacola Executive House Condominium Ass'n, 581 So.2d 1301 (Fla. 1991); First Florida Bank, N.A. v. Max Mitchell & Co., 558 So.2d 9 (Fla. 1990); First American Title Ins. Co. v. First Title Service Co., 457 So.2d 467 (Fla. 1984); see also McAbee v. Edwards, 340 So.2d 1167 (Fla. 4th DCA 1976). Specifically, we stated in Baskerville-Donovan Engineers:
[P]rivity between the parties may create a duty of care providing the basis of recovery in negligence. However, lack of privity does not necessarily foreclose liability if a duty of care is otherwise established. See, e.g., First Florida Bank, N.A. v. Max Mitchell & Co., 558 So.2d 9 (Fla. 1990); McAbee v. Edwards, 340 So.2d 1167 (Fla. 4th DCA 1976) (attorney preparing will has duty to client's intended beneficiaries). Thus, the two terms are not interchangeable. As the First District noted below:
Section 95.11(4)(a) is specifically limited in application "to persons in privity with a professional." The decision by the supreme court in First American Title Ins. Co. v. First Title Service Co., [457 So.2d 467 (Fla. 1984)], and its more recent decision in First Florida Bank, N.A. v. Max Mitchell & Co., 558 So.2d 9 (Fla. 1990), do not expand that limitation. Rather, those decisions relax the privity limitation on liability by expanding the class of persons who could bring a cause of action against a professional beyond those in strict contractual privity with the professional.

... .

*282 [I]t is clear that "privity" has not been redefined by the supreme court. Rather, by way of these opinions the court has simply identified parties not in direct contractual privity, or even in "near privity," who may sue the professional.
[Pensacola Executive House Condominium Ass'n v. Baskerville-Donovan Engineers, Inc.] 566 So.2d 850 at 852-53 [Fla. 1st DCA 1990] (emphasis in original).
Id. at 1303 (citation omitted) (emphasis added). We conclude that this analysis recognizing that privity is not always needed to establish liability should apply to the professional relationship between a patient's child and a health care provider.
Here, the alleged prevailing standard of care was obviously developed for the benefit of the patient's children as well as the patient. We conclude that when the prevailing standard of care creates a duty that is obviously for the benefit of certain identified third parties and the physician knows of the existence of those third parties, then the physician's duty runs to those third parties. Therefore, in accord with our decision in Baskerville-Donovan Engineers, we hold that privity does not bar Heidi Pate's pursuit of a medical malpractice action. Our holding is likewise in accord with McCain because under the duty alleged in this case, a patient's children fall within the zone of foreseeable risk.
Though not encompassed by the certified question, there is another issue which should be addressed in light of our holding. If there is a duty to warn, to whom must the physician convey the warning? Our holding should not be read to require the physician to warn the patient's children of the disease. In most instances the physician is prohibited from disclosing the patient's medical condition to others except with the patient's permission. See § 455.241(2), Fla. Stat. (1989). Moreover, the patient ordinarily can be expected to pass on the warning. To require the physician to seek out and warn various members of the patient's family would often be difficult or impractical and would place too heavy a burden upon the physician. Thus, we emphasize that in any circumstances in which the physician has a duty to warn of a genetically transferable disease, that duty will be satisfied by warning the patient.
Accordingly, we conclude that the trial court erred by dismissing the complaint with prejudice. Whether the Pates can recover for medical malpractice depends upon the prevailing standard of care pursuant to section 766.102. The pleadings were prematurely terminated based upon the trial court's conclusion that a lack of privity prevented the Pates from stating a cause of action. We therefore quash the decision of the district court affirming the dismissal of the complaint with prejudice and remand for further proceedings in accord with this opinion.
It is so ordered.
GRIMES, C.J., and OVERTON, KOGAN, HARDING and ANSTEAD, JJ., concur.
SHAW, J., concurs in result only.
NOTES
[1] Pate's husband alleged that his damages included, in addition to medical expenses, loss of his wife's support, attention, services, affection, and consortium.
[2] See Hofmann v. Blackmon, 241 So.2d 752 (Fla. 4th DCA 1970), cert. denied, 245 So.2d 257 (Fla. 1971); Gill v. Hartford Accident & Indem. Co., 337 So.2d 420 (Fla. 2d DCA 1976).
[3] The facts of a particular case are not the only source that may give rise to a duty to avoid negligent acts. We have also recognized that a duty may arise from: (1) legislative enactments or administrative regulations; (2) judicial interpretations of such enactments or regulations; and (3) other judicial precedent. McCain, 593 So.2d at 503 n. 2 (citing Restatement (Second) of Torts § 285 (1965)).
[4] Section 766.104, Florida Statutes (1989), provides in part:

(1) No action shall be filed for personal injury or wrongful death arising out of medical negligence, whether in tort or contract, unless the attorney filing the action has made a reasonable investigation as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint or initial pleading shall contain a certificate of counsel that such reasonable investigation gave rise to a good faith belief that grounds exist for an action against each named defendant. For purposes of this section, good faith may be shown to exist if the claimant or his counsel has received a written opinion, which shall not be subject to discovery by an opposing party, of an expert as defined in s. 766.102 that there appears to be evidence of medical negligence.