739 So.2d 1189 (1999)
Eric HEWKO, as Personal Representative of the Estate of Marjorie E. Leland, deceased, Appellant,
v.
Gary S. GENOVESE, Gary S. Genovese, P.A., and Conrad, Scherer, James & Jenne, P.A., a Florida Partnership, Appellees.
No. 98-2309.
District Court of Appeal of Florida, Fourth District.
July 28, 1999.
Rehearing Denied September 24, 1999.
Eric Hewko of The Hewko Firm, North Palm Beach, pro se.
Jane Kreusler-Walsh of Jane Kreusler-Walsh, P.A., West Palm Beach, for appellant.
Richard A. Sherman of Richard A. Sherman, P.A., Fort Lauderdale, and Lewis N. Jack, Jr., of Josephs, Jack & Gaebe, Miami, for appellees.
POLEN, J.
Eric Hewko, as personal representative of the Estate of Marjorie E. Leland, the insured and plaintiff below in this legal malpractice action, appeals a final judgment in favor of the defendants, Gary S. Genovese and Conrad, Sherer, James, and Jenne, P.A. (Genovese), entered after the trial court directed a verdict in favor of Genovese and the law firm on the issue of duty. We agree with the trial court that Hewko failed to produce evidence from which the jury could find Leland was the intended third-party beneficiary of Genovese's representation of the Insurer, United Community Insurance Company (UCIC).

FACTS
Leland's son was involved in an automobile accident while driving Leland's car on March 4, 1993, which accident resulted in the injury of three people including Bernice Horne who suffered knee injuries, her nine year old daughter Quinn Horne who sustained brain damage, and another driver, Denise Brockman, who suffered soft tissue injuries. Leland had automobile insurance *1190 with UCIC with coverage limits of $25,000/50,000. The Homes hired Chris Larmoyeux, and Brockman hired Bettye King of Lytal & Reiter, respectively, as their attorneys.
Larmoyeux's paralegal, Ralph Wiles, spoke with the UCIC adjuster assigned to the file, Paul Sypek, who after hearing a description of the Homes' injuries, stated he would send the policy limits. King's paralegal, Barbara Hoxter, asked UCIC to postpone settling with the Homes until UCIC had Brockman's medical records, and King sent UCIC those records on May 18, 1993. When the Homes had received no money by July 15, 1993, Larmoyeux wrote to UCIC demanding the total of all applicable liability limits or $2.5 million within thirty days. Larmoyeux enclosed a copy of Harmon v. State Farm Mutual Automobile Insurance Co., 232 So.2d 206 (Fla. 2d DCA 1970) which provides that an insurance company may settle certain claims by paying the policy limits, without regard to other possible claims. This course of action was indeed available to UCIC.
Sypek, UCIC claims manager Mark Solazzo, and UCIC's in-house counsel decided to hire Florida counsel to get advice on how best to settle all three claims. Sypek, who admitted putting UCIC's interest above that of Leland, phoned Genovese and told him he would send a file, then handwrote a note requesting "legal advise in hopes to avoid one or both parties pursuing a [bad faith] action." Sypek left UCIC for another job immediately after writing the letter which was never sent, and the file was reassigned to adjuster Jeff Babcock.
Solazzo had Babcock pull the file for review, then called Genovese on August 17, 1993, and discussed the serious injuries and competing claims from two law firms. The first words out of Solazzo's mouth were that the two lawyers were setting up UCIC for bad faith, and UCIC wanted Genovese to help protect UCIC's interests. Genovese discussed three options with Solazzo: 1) settle all claims within the limits in exchange for releases, an option Solazzo said had been tried and rejected, though Larmoyeux and King both testified UCIC had not attempted settlement; 2) pay the worst claim; or 3) file an interpleader action to show UCIC's willingness to settle in an attempt to avoid a bad faith claim, the option Genovese ultimately pursued, which ended when the interpleader action was dismissed as improper.
Solazzo had UCIC's entire file copied and overnighted to Genovese on August 17, 1993, although Genovese testified Larmoyeux's July 15 demand letter was not included in the file. Genovese received the file and a "new matter form" was prepared by a file clerk in his firm showing the clients as "UCIC/Insured Marjorie E. Leland and/or Ross T. Leland," and listing the lawyers as Larmoyeux "attorney for plaintiff," and King "attorney for Brockman."
Genovese testified his efforts in filing the interpleader action were not intended for the Lelands' benefit or detriment; the Lelands' interests did not "enter into the equation." Genovese never appeared in any court on behalf of the Lelands, nor did he ever write a letter or pleading indicating either directly or indirectly that he represented either of the Lelands. He filed the interpleader to show UCIC's willingness to settle when a future bad faith claim was raised.
Unaware Genovese filed the interpleader action in late August, Larmoyeux filed suit against the Lelands on August 26, 1993. Genovese had previously told Solazzo he could not represent the Leland family because he represented UCIC. Solazzo understood there would be a conflict with Genovese representing both UCIC and the Lelands, and it hired Robert Glassman from Conroy, Simberg and Lewis to represent the Lelands.
After the interpleader action was dismissed, Genovese filed a declaratory action, which was also ultimately dismissed. *1191 In early November of 1993, Larmoyeux spoke with Genovese and advised UCIC was set up for a bad faith claim. Genovese was under the impression Larmoyeux and King repeatedly rejected UCIC's settlement attempts. Genovese contacted UCIC which gave Genovese authority, for the first time, to offer the policy limits, which Genovese did, and which Larmoyeux rejected by letter dated November 18, 1993. Genovese had no further involvement in the case after that date. Larmoyeux testified he had received no settlement offers up to that time from Robert Glassman, the attorney UCIC hired to represent the Lelands in the Homes' suit, and Glassman told Larmoyeux Genovese was handling all negotiations on behalf of the insured. Glassman eventually entered into settlement negotiations with the Homes about two months before trial. Glassman confirmed Genovese had no participation in the Lelands' defense.
UCIC hired outside Florida counsel to handle the bad faith claims and subsequently went into receivership. The Homes' case was heard in October of 1994, with the parties agreeing to damages of $2 million and submitting liability to the jury, which found the Lelands 100% at fault. UCIC paid $50,000, leaving a $1,950,000 unsatisfied judgment against the Lelands.
Hewko filed the instant suit against Genovese alleging Leland was a third-party beneficiary of the relationship between UCIC and Genovese, or alternatively, Genovese assumed an obligation to the Lelands. A motion to dismiss and motion for summary judgment based on lack of privity were denied and the case was tried.

MOTION FOR DIRECTED VERDICT
At the close of the plaintiffs' case Genovese moved for a directed verdict on the issue of duty arguing Leland failed to establish privity between herself and Genovese. It was uncontroverted Leland had no direct contractual relationship with Genovese or his firm. As to an intended third-party beneficiary theory, Genovese argued the only two people to present direct testimony on the question of why Genovese was retained and by whom he was retained were Mark Solazzo, claims manager at UCIC, and Genovese himself, both of whom testified Genovese was hired to represent UCIC's interests only.
Genovese argued Leland did not fit within the narrowly defined third-party beneficiary exception to the privity requirement in a malpractice action. Genovese argued there was a conflict of interest between Leland and UCIC. He argued the potential for Leland to receive a benefit should UCIC settle the case through Genovese's actions made Leland a mere potential or incidental third-party beneficiary, as opposed to an intended third-party beneficiary.
The court granted Genovese's motion for directed verdict on the basis Leland failed to establish she was an intended third-party beneficiary of UCIC's agreement with Genovese.

DIRECTED VERDICT PROPER
We conclude the trial court properly directed a verdict on the issue of duty. The rule of privity in legal malpractice actions is relaxed when the plaintiff is the intended third-party beneficiary of the contract between the client and the attorney. Brennan v. Ruffner, 640 So.2d 143 (Fla. 4th DCA 1994). This narrow exception to the privity rule was recognized in Angel, Cohen & Rogovin v. Oberon Inv., N.V., 512 So.2d 192 (Fla.1987), where the court held a corporation was not the intended third-party beneficiary of a corporate fiduciary's contract with a law firm, which firm assisted the corporate fiduciary in purchasing the corporation's wholly owned subsidiary and reselling it at a profit. See id. at 194. The court noted the rule of privity was relaxed in Florida cases only where it was the apparent intent of the client to benefit a third party, such as in the area of will drafting. See id. In those cases, a beneficiary's action in negligence falls within the exception to the privity requirement where testamentary *1192 intent as expressed in the will is frustrated by the attorney's negligence and as a direct result of such negligence the beneficiary's legacy is lost or diminished. See id. Even in the context of will drafting, standing in legal malpractice actions is limited to those who can show that the testator's intent as expressed in the will is frustrated by the negligence of the testator's attorney. Thus a child not mentioned in a will may be unable to establish she is an intended third-party beneficiary. See Espinosa v. Sparber, Shevin, Shapo, Rosen & Heilbronner, 612 So.2d 1378 (Fla. 1993).
In Brennan this court rejected the argument that a minority shareholder in a closely held corporation was the intended third-party beneficiary of a contract of representation between the corporation and its attorney who drafted the shareholder's agreement. See Brennan, 640 So.2d at 146. This court concluded no facts supported the minority shareholder's assertion that the primary intent of the corporation in hiring the attorney to draft the shareholder's agreement was to directly benefit the minority shareholder individually. See id.
In the case at bar, the only direct evidence on the issue of Genovese's representation of UCIC was that offered by Solazzo and Genovese, both of whom testified unequivocally that Genovese was hired to represent UCIC's interests after it was learned UCIC was being set up for bad faith claims. Genovese consistently testified his client was UCIC. Genovese was hired to protect UCIC's interest, and he informed Solazzo about a conflict of interest even before the issue of representation of the Lelands was raised. UCIC hired Glassman to represent the Lelands in the Home litigation, and Genovese had no participation in the Lelands' defense. This evidence supports only one conclusion: Leland was not the intended (or "apparent" or "direct") third-party beneficiary of UCIC's contract with Genovese.
Despite this unequivocal direct evidence, Leland points to various circumstances of Genovese's representation of UCIC, which Leland argues created an inference UCIC intended to benefit the Lelands. For example, Leland emphasizes Genovese's internal file tracking system including the "new matter form" styled Horne/Brockman v. Leland, Larmoyeux's testimony that Glassman told him all settlements would be handled by Genovese, a UCIC letter written at the time UCIC went into receivership which stated Mr. Genovese represented UCIC's "insureds," and Genovese's failure to advise UCIC to hire an attorney to represent Leland's interests.
The mere fact Leland can point to only circumstantial evidence in an attempt to prove her case belies her contention she was an apparent third-party beneficiary of UCIC's contract with Genovese. We decline Leland's invitation to significantly extend what to date has been a narrow exception to the privity requirement in legal malpractice cases, by including within that exception cases where an intent to benefit a third party is not apparent but must be inferred from circumstantial evidence at odds with all direct evidence submitted on the issue. An intent to benefit a third party which must be inferred from contradicted circumstantial evidence cannot be characterized as "apparent," "direct," or "primary."
Neither are we persuaded by Leland's citation to this court's opinion in Rushing v. Bosse, 652 So.2d 869 (Fla. 4th DCA 1995). In Rushing this court addressed the narrow privity exception in legal malpractice cases and held an adoptive child was the intended beneficiary of the relationship between the prospective adoptive parents and their attorney, such that a cause of action for professional negligence against the attorney who institutes and proceeds with a private adoption does not require contractual privity between the child and attorney. See id. at 873. In allowing the legal malpractice action, however, this court noted the unique nature of *1193 adoption proceedings where the legislature has expressly stated the intended beneficiary of the proceedings is the child to be adopted. See id. at 873. No such express intent is present under the circumstances of this case.
In proposing an expansion of the privity exception, Leland cites to Pate v. Threlkel, 661 So.2d 278 (Fla.1995). In Pate the court analogized the medical malpractice case before it to cases involving other professional relationships, recognizing the right of identified third-party beneficiaries to recover from a professional where the third-party beneficiaries are intended beneficiaries of the prevailing standard of care. See id. at 281. Pate concerned a medical malpractice action brought by the adult child of a woman diagnosed with a genetically transferable disease. See id. at 279. The court held the woman's physicians had a duty to warn the woman of the genetically transferable nature of her disease, a duty which ran not only to the woman, but also to the woman's adult child for whose benefit the prevailing standard of care was obviously developed. See id. at 282.
Arguably, Pate did not extend the privity requirement at all, because in Pate the requisite showing of a primary and direct intent to benefit the identified third party was satisfied by the very nature of the medical malpractice claim. A duty to warn of a genetically transferable disease must be intended to benefit offspring at risk for inheriting the disease. The instant case is distinguishable from Pate because here no primary and direct intent to benefit the Lelands is apparent from the mere circumstances of the case.
In the case at bar it was uncontroverted Genovese was hired to represent UCIC's interests. Those interests were at times in conflict with the Lelands' interests. Where UCIC's interests were compatible with the Lelands', any benefit the Lelands would have received from Genovese's settlement efforts would have been incidental or collateral to Genovese's representation of UCIC, not intentional and primary. Therefore, the trial court properly determined the Lelands failed to establish they fit within the narrow exception to the privity requirement in legal malpractice cases, and properly granted Genovese's motion for directed verdict.
AFFIRMED.
DELL and FARMER, JJ., concur.