DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**KARIM H. SAADEH,**
Appellant,

v.

**MICHAEL CONNORS, COLETTE MEYER, DEBORAH BARFIELD,** and
**JACOB NOBLE,**
Appellees.

No. 4D13-4831

[June 24, 2015]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Peter D. Blanc, Judge; L.T. Case No. 502010CA008347XXXXMB.

Bryan J. Yarnell and Irwin R. Gilbert of Gilbert│Yarnell, Palm Beach Gardens, for appellant.

David J. Sales of David J. Sales, P.A., Jupiter, for appellee Colette Meyer, Esq.

Robert W. Goldman of Goldman Felcoski & Stone, P.A., Naples, Gerald B. Cope, Jr. of Akerman LLP, Miami, Kenneth B. Bell of Gunster, Tallahassee, and John W. Little III of Gunster, West Palm Beach, for Amicus Curiae The Real Property Probate & Trust Law Section of The Florida Bar.

CIKLIN, J.

Karim H. Saadeh appeals the final summary judgment entered in favor of an attorney he sued for professional negligence. The trial court based its summary judgment on a finding that, as a matter of law, an attorney representing Saadeh's court-appointed guardian owed Saadeh no duty under a third-party beneficiary theory. We disagree with the trial court's finding and reverse.

This is not the first time the incapacitation proceedings involving Saadeh have resulted in litigation, and ultimately, an appeal. Our opinion in *Jasser v. Saadeh*, 97 So. 3d 241 (Fla. 4th DCA 2012), illuminates the

protracted path that has led the parties to this point.

Mr. Saadeh is a wealthy man of advanced years. After his wife passed away, a relative introduced him to a younger woman. Saadeh loaned money to the woman, which alarmed his adult children. In response, the children contacted attorney Colette Meyer who worked with a professional guardian, Deborah Barfield ("guardian"). The guardian filed an incapacitation petition, attaching a neurologist's report diagnosing Saadeh with "dementia, probably Alzheimer's." *Id.* at 242-43.

After a hearing, the court appointed the guardian because of an "emergency." Colette Meyer then became the [emergency temporary] guardian's attorney (and will be referred to hereinafter as the "guardian's attorney"). The court-ordered duration of the temporary guardianship was ninety days, pending a full hearing on incapacitation. *Id.* at 244. Three days after the guardian's appointment—after two members of the examining committee submitted reports finding Saadeh competent—the guardian's attorney and Saadeh's court-appointed attorney "submitted to the court an agreed order to 'settle' the guardianship," agreeing that Saadeh would execute a trust in lieu of plenary guardianship.[1] *Id.* The agreed order provided that Saadeh would execute the required trust within seven days, and that "[a]ll pending incapacity proceedings . . . are hereby dismissed . . . ." *Id.* at 244-45.

The trial court never dismissed the underlying emergency temporary guardianship (petition), and the parties and the court continued to conduct themselves as though the subject guardianship proceedings had never been dismissed, the agreed order notwithstanding. *Id.* at 245-46.

Saadeh was again found competent by a newly-appointed examining committee, and the incapacitation proceedings appear to have then finally and formally come to an end. The litigation, however, continued.

Saadeh sought an order from the trial court setting aside the establishment of the trust originally required by the agreed order to "settle" the guardianship. The trial court agreed with Mr. Saadeh and entered a summary judgment setting aside the trust which this court affirmed. *Id.*

---

[1] "Once formed, plenary guardianships grant all of the ward's delegable rights over person and property to the guardian, while limited guardianships grant only that authority expressly set forth in the guardianship order." *Whiting v. Whiting*, 160 So. 3d 921, 925 (Fla. 5th DCA 2015); *see also* § 744.344(5), Fla. Stat. (2009) ("A plenary guardian shall exercise all delegable rights and powers of the incapacitated person.").

at 249.

Subsequently, in 2010, Saadeh brought suit against multiple players in the guardianship proceedings, including the guardian's attorney, the guardian, and Saadeh's court-appointed attorney. In count III of his complaint, Saadeh pled a count of professional negligence and breach of duty against the guardian's attorney. It is this malpractice action against the guardian's attorney which is the primary issue now before us.

Saadeh alleged the following. The guardian's attorney represented the guardian while the guardian was acting as a court-appointed emergency temporary guardian for Saadeh. The guardian, Saadeh's court-appointed attorney, and the guardian's attorney agreed that Saadeh would execute a trust in return for the dismissal of the incapacity proceedings. They engaged the services of an attorney to draft the irrevocable trust document. The guardian's attorney and Saadeh's adult children met with Saadeh in an attempt to pressure him to sign the document which established the trust. The guardian's attorney was aware Saadeh was elderly, lacked a formal education, and spoke English as a second language, yet she advised Saadeh regarding the mechanics of the trust. She led Saadeh to believe he would remain in control of the trust and its contents, and would be able to make decisions regarding the trust. Although Saadeh initially refused to sign the document, he succumbed to the pressure. Afterward, Saadeh discovered the trust was irrevocable and had actually granted all trust control to his adult children. The guardian's attorney failed to advise Mr. Saadeh of the significant negative tax consequences of establishing such a trust.

The guardian's attorney moved for summary judgment, arguing that there was no privity of contract between her and Mr. Saadeh (the ward), and thus she owed no duty directly to Mr. Saadeh. She also argued that Saadeh's interests were adverse to the interests of the children and the guardian.

After a hearing, the court granted summary judgment in favor of the guardian's attorney, rejecting the argument that Saadeh was an intended beneficiary. The court noted that Saadeh's court-appointed attorney invited the guardian's attorney to speak to Saadeh, and it compared this situation to a criminal defense attorney and his client engaging in plea negotiations with a prosecutor. The court also relied on section 744.331(2)(c), Florida Statutes, which precludes an attorney for the alleged incapacitated person from serving as either the guardian or the attorney for the guardian.

3

Here, the claim against the guardian's attorney was for professional negligence, and the court's entry of summary judgment was based on the element of duty. Our standard of review is de novo. *Chhabra v. Morales*, 906 So. 2d 1261, 1262 (Fla. 4th DCA 2005).

"'[W]here a defendant establishes as a matter of law, that no duty is owed to the plaintiff, the trial court may properly grant summary judgment in favor of the defendant.'" *Hanrahan v. Hometown Am., LLC*, 90 So. 3d 915, 917 (Fla. 4th DCA 2012) (citation omitted). "An attorney's liability for professional negligence is generally limited to clients with whom the attorney shares privity of contract." *Dingle v. Dellinger*, 134 So. 3d 484, 487 (Fla. 5th DCA 2014). However, "[i]f the parties are not in privity, to bring a legal malpractice action, the plaintiff must be an intended third-party beneficiary of the lawyer's services." *Id.* at 487-88.

Saadeh asserts that he was a third party beneficiary insofar as he was the ward and thus, by definition, the intended beneficiary of everything connected with the underlying guardianship proceeding. Even though legal services were technically provided to the guardian, Mr. Saadeh urges that since his guardianship estate was compensating *both the guardian and the guardian's attorney,* the attorney owed him a duty of care. Mr. Saadeh urges that as the "incapacitated ward," he was the *intended* beneficiary of services provided by the guardian's attorney. He vigorously argues that it would be an oxymoron to consider him, as the ward of the estate, to ever be rendered as nothing more than an incidental third party beneficiary.

Generally, "[t]o assert a third-party beneficiary claim, the complaint must allege: (1) a contract; (2) an intent that the contract primarily and directly benefit the third party; (3) breach of the contract; and (4) resulting damages to the third party." *Id.* at 488. "Florida has extended the third party beneficiary exception to the privity requirement in legal malpractice actions to very limited circumstances, mainly in the area of will drafting, where it can be demonstrated that the intent of the clients in engaging the services of the lawyer was to benefit a third party." *Brennan v. Ruffner*, 640 So. 2d 143, 146 (Fla. 4th DCA 1994). However, although the "privity requirement has been relaxed most frequently in will drafting situations," the third-party beneficiary exception to the rule of privity may apply in other contexts. *Dingle*, 134 So. 3d at 488 (citation omitted). It must be "apparent" that the "intent of the client" is "to benefit a third party . . . ." *Hewko v. Genovese*, 739 So. 2d 1189, 1191 (Fla. 4th DCA 1999) (citation omitted).

In determining whether the attorney for the emergency temporary

guardian owes a duty to the alleged incapacitated person under a third party beneficiary theory, we first turn to the guardianship statutes. Upon the filing of a petition to determine incapacity, the court must appoint an attorney to represent the alleged incapacitated person. § 744.331(2)(b), Fla. Stat. (2009). "Any attorney representing an alleged incapacitated person may not serve as guardian of the alleged incapacitated person or as counsel for the guardian of the alleged incapacitated person or the petitioner." § 744.331(2)(c), Fla. Stat. (2009).

While the petition is pending, the court may appoint an emergency temporary guardian to protect the alleged incapacitated person and any property from imminent harm. *See* § 744.3031(1), Fla. Stat. (2009). The court must appoint counsel to represent the emergency temporary guardian. *See id.* During the temporary guardianship, the emergency temporary guardian is the alleged incapacitated person's fiduciary to the extent defined by the court. *See Maxwell v. First Union Bank*, 782 So. 2d 931, 933-34 (Fla. 4th DCA 2001) ("Express fiduciary relationships are created by contract, such as principal/agent, or can be created by legal proceedings in the case of a guardian/ward."); *Centrust Savings Bank v. Barnett Banks Trust Co., N.A.*, 483 So. 2d 867, 869 (Fla. 5th DCA 1986) ("The term fiduciary includes not only court appointed guardians, executors, and administrators, but every person acting in a fiduciary capacity for another and includes a trustee under any trust, express or implied, an officer of a corporation, and many others."). Even though there is no lawyer-client relationship between the alleged incapacitated person who is a temporary ward and the lawyer for the emergency temporary guardian, counsel for the emergency temporary guardian owes a duty of care to the temporary ward.

An opinion of this court in a case involving incapacitation, albeit in the context of adoption of a minor, supports the proposition that the attorney for the emergency temporary guardian in incapacitation proceedings owes a duty to the ward. In *Rushing v. Bosse*, 652 So. 2d 869 (Fla. 4th DCA 1995), a professional negligence complaint was brought on behalf of a child against the attorneys who handled the private adoption proceeding which removed her from Florida and the care of relatives for a nine-month period. One of the attorneys for the adoptive parents also acted as intermediary for the child's placement. The complaint alleged, among other things, that the attorney counseled the adoptive parents to falsify Florida residency and that he induced the mother of the child to give up any rights to the child by paying her money. This court reversed the dismissal of this count of the complaint, finding that privity of contract was not necessary where the child was the "intended beneficiary of the adoption" and the defendants were the attorneys for the adoptive parents, "who evidently intended to

benefit the child by adopting her." *Id.* at 873. This court also reasoned that the attorney "served as an intermediary for the child," and thus had other responsibilities he owed her. *Id.* We noted that adoption proceedings are "unique" in that, under the adoption statutes, the intended beneficiary of the proceeding is the child to be adopted. *Id.*

Here, as in *Rushing*, the proceedings were rooted in a Florida statute that involves the protection of incapacitated persons. Chapter 744, Florida Statutes, governs guardianship proceedings. The purpose of the act is "to protect the public welfare" by protecting the rights of incapacitated persons. § 744.1012, Fla. Stat. (2010).[2] Mr. Saadeh was the apparent intended beneficiary of the guardian's attorney's services. It would be antithetical to suggest that a guardian—appointed for the sacrosanct reason of providing protection to the ward and at the ward's expense—could *ever* take *any* action which would knowingly be adverse to the alleged incapacitated person.

In a 1996 opinion of former Attorney General Robert Butterworth, the existence of this duty of care is explained:

> Under the state's guardianship statutes, it is clear that the ward is the intended beneficiary of the proceedings. Section 744.108, Florida Statutes, authorizes the payment of attorney's fees to an attorney who has "rendered services to the ward or to the guardian on the ward's behalf[.]" Thus, the statute itself recognizes that the services performed by an attorney who is compensated from the ward's estate are performed on behalf of the ward even though the services are technically provided to the guardian. The relationship

---

[2] The statute provides in pertinent part:

> Recognizing that every individual has unique needs and differing abilities, the Legislature declares that it is the purpose of this act to promote the public welfare by establishing a system that permits incapacitated persons to participate as fully as possible in all decisions affecting them; that assists such persons in meeting the essential requirements for their physical health and safety, in protecting their rights, in managing their financial resources, and in developing or regaining their abilities to the maximum extent possible; and that accomplishes these objectives through providing, in each case, the form of assistance that least interferes with the legal capacity of a person to act in her or his own behalf.

§ 744.1012, Fla. Stat. (2009).

> between the guardian and the ward is such that the ward must be considered to be the primary or intended beneficiary and cannot be considered an "incidental third-party beneficiary."
>
> . . . .
>
> Since the ward is the intended beneficiary of the guardianship, an attorney who represents a guardian of a person adjudicated incapacitated and who is compensated from the ward's estate for such services owes a duty of care to the ward as well as to the guardian.

Fla. AGO 96-94, 1996 WL 680981.

In its amicus brief that we invited and appreciate, the Real Property Probate & Trust Law Section of the Florida Bar indicates agreement with the Attorney General opinion. The Section reminds us that the lack of privity does not foreclose the possibility of a duty of care to a third party intended to benefit from a lawyer's services. The Section points out that the reasoning in the Attorney General opinion is supported by section 744.1012, Florida Statutes (2009), in which the Legislature states its willful intent to protect incapacitated persons.

Based on the foregoing analysis, we find that Saadeh and everything associated with his well-being is the very essence i.e. the exact point, of our guardianship statutes. As a matter of law, the ward in situations as this, is both the primary *and* intended beneficiary of *his* estate. To tolerate anything less would be nonsensical and would strip the ward of the dignity to which the ward is wholly entitled. Whether there was a breach of the duty which caused damages obviously remains to be determined. But Mr. Saadeh has a viable and legally recognizable cause of action against the guardian's attorney which is available to Mr. Saadeh and which we direct be immediately reinstated. Accordingly, we remand for further proceedings.

*Reversed and remanded for further proceedings.*

WARNER and GERBER, JJ., concur.

* * *

**Not final until disposition of timely filed motion for rehearing.**

7