846 So.2d 1169 (2003)
Theresa L. CHEEKS, as Personal Representative of the Estate of Jeffrey Williams, deceased and Theresa L. Cheeks, as Personal Representative of the Estate of Travonda Monique Williams, a deceased minor, Appellant,
v.
Joseph E. DORSEY, M.D., South Florida Substantive Abuse, Ind., A Florida corporation and Pompano Treatment Center, Inc., a Florida corporation, Appellees.
No. 4D02-491.
District Court of Appeal of Florida, Fourth District.
May 7, 2003.
Rehearing Denied June 27, 2003.
*1170 Lauri Waldman Ross and Theresa L. Girten of Lauri Waldman Ross, P.A., and Scott Leeds of Leeds & Colby, Miami, for Appellants.
Atlee W. Wampler, III, and Larry L. Cook of Wampler, Buchanan, Walker, Chabrow & Banciella, P.A., Miami, for appellee Pompano Treatment Center, Inc., a Florida corporation.
SHAHOOD, J.
Appellant, Theresa L. Cheeks, is the personal representative of the estate of her fiance, Jeffrey Williams, and her daughter, Travonda Williams, both of whom were killed on March 11, 1994 in a car accident caused by Richard Reutlinger (Reutlinger), a methadone patient of Pompano Treatment Center (Pompano). Cheeks filed a Complaint for Damages against Joseph E. Dorsey, M.D., owner of Pompano, South Florida Substance Abuse, Inc. (South Florida) and Pompano. Dr. Dorsey and South Florida were granted summary judgments early in the lawsuit. No appeals were taken with respect to those defendants and they are not parties to this appeal.
The thrust of appellant's complaint was that Reutlinger was known to regularly abuse prescription and non-prescription drugs, that he did so on the evening of March 10, 1994 and in the early morning hours of March 11, 1994, and that, despite the fact that Reutlinger was impaired, Pompano administered the usual dose of methadone that morning without first testing Reutlinger's blood or urine to determine whether it contained drugs which might negatively interact with methadone. As a result, Reutlinger was too impaired to operate a motor vehicle and the methadone-induced impairment was the proximate cause of the ensuing accident. Appellant further alleged that Pompano knew or should have known that Reutlinger regularly abused drugs and that those drugs combined with methadone would create a "dangerous level of impairment."
Appellant alleged, specifically, that the clinic breached its duty by (a)failing to properly conduct a drug screen urinalysis on Reutlinger; (b)failing to institute and follow policy and procedure for patient management while providing methadone treatment to Reutlinger; and (c)failing to perform proper screening of Reutlinger on March 11, 1994 which would have alerted staff to his impaired condition and led the staff not to administer methadone. Appellant alleged that Pompano's breach of these duties constituted negligence, departed from the standard of care, and was the direct and proximate cause of the death of the decedents.
In its motion for summary judgment, Pompano did not deny that Reutlinger caused the accident which killed the decedents or that, approximately one hour before the accident, he had received his daily dose of methadone at the clinic. The clinic did, however, deny that it was negligent in administering the methadone to Reutlinger on the day of the accident.
Pompano asserted, among other things, that it could not reasonably be held liable to third parties, unidentified members of the driving public at large, who were injured by the addict's abuse of the methadone; therefore, it owed no duty to appellant's decedents who were unforeseen third parties. Pompano denied that the clinic's actions fell below the standard of care.
*1171 In support of its position, Pompano submitted the affidavits of several of its staff members. Each stated that he or she knew Reutlinger well, saw him or interacted with him on the day in question and found him to be normal or not impaired or alert with no slurred speech and no smell of alcohol.
The affidavits submitted by Pompano were in direct conflict with the depositions submitted by appellant. Reutlinger's roommate stated that Reutlinger was doing drugs on the evening of March 10th and appeared to still be impaired the following morning when he left to go to the clinic.
A friend of Reutlinger's who is also a patient at the clinic, Scott Gale (Gale), stated that he and Reutlinger had been doing cocaine and other drugs together for approximately five to seven years. On the morning of the accident, Gale saw Reutlinger and noticed that his eyes were very red. Reutlinger received his methadone dose anyway and Gale remembered discussing it with the nurse at the clinic. According to Gale, approximately fifteen minutes later, Reutlinger was disoriented and upset as if he had been doing cocaine or amphetamines.
Dr. Dorsey, owner of the methadone clinic, agreed that it would be a deviation from the prevailing standard of care to administer methadone to a patient who is known to be high. He stated that it is the policy of the clinic to discharge such patients without medicating them.
The state trooper who responded to the scene of the accident observed Reutlinger and noted that his pupils were dilated even while looking directly into the sun and he appeared to be "spaced out." This gave the trooper the impression that Reutlinger was impaired. Toxicology reports confirmed that Reutlinger had high levels of cocaine, Valium, methadone, and codeine in his system. In criminal proceedings, Reutlinger pled guilty to two counts of DUI manslaughter and was sentenced to fifteen years in state prison.
After hearing arguments, the trial court granted Pompano's motion for summary judgment, ruling that Pompano did not owe a duty to the decedents, and entered a Final Summary Judgment in favor of Pompano. This appeal follows.
Summary judgment should not be granted if there are genuine issues of material fact. See Moore v. Morris, 475 So.2d 666, 668 (Fla.1985). The standard of review of a trial court's ruling on a motion for summary judgment is de novo. See Mashni v. LaSalle Partners Mgmt. Ltd., 842 So.2d 1035 (Fla. 4th DCA 2003).
In negligence cases, summary judgments should be cautiously granted. Moore, 475 So.2d at 668. The duty of care in a negligence action is a question of law; proximate causation is a question of fact. See McCain v. Fla. Power Corp., 593 So.2d 500, 501 (Fla.1992). The question of foreseeability is relevant to both the element of duty and the element of proximate causation. The Florida Supreme Court in McCain explained the following in determining liability:
The duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader "zone of risk" that poses a general threat of harm to others. See Kaisner [v. Kolb], 543 So.2d [732][at] 735 [Fla. 1989] (citing Stevens v. Jefferson, 436 So.2d 33, 35 (Fla.1983)). The proximate causation element, on the other hand, is concerned with whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred. In other words, the former is a minimal threshold legal requirement for opening the courthouse *1172 doors, whereas the latter is part of the much more specific factual requirement that must be proved to win the case once the courthouse doors are open. As is obvious, a defendant might be under a legal duty of care to a specific plaintiff, but still not be liable for negligence because proximate causation cannot be proven.
Id. at 503(footnote omitted); Napoli v. Buchbinder, 685 So.2d 46, 47 (Fla. 4th DCA 1996). "The proper way of determining whether a duty existed is to decide whether the defendant's actions created a foreseeable zone of risk, not by whether the specific injury suffered was foreseeable by the defendant." See Fla. Power & Light Co. v. Periera, 705 So.2d 1359, 1361 (Fla.1998).
In Fitzer v. Forlaw, 435 So.2d 839 (Fla. 4th DCA 1983), quashed by, 456 So.2d 432 (Fla.1984), this court considered the issue of whether "a cause of action can be stated in favor of a third party upon an allegation of prescribing pills to a known drug addict." Id. at 839. In other words, the court considered whether the third party was within the foreseeable zone of risk, such that a duty could be imposed on the doctor. In that case, Fitzer was killed when struck by an automobile driven by a patient allegedly under the influence of Quaaludes which had been prescribed by his doctor. Id. Her estate filed a wrongful death suit against the doctor alleging that he knew or should have known that the patient was a drug addict. Id. The trial court granted the doctor's motion to dismiss the complaint. Id. This court reversed holding, "if a doctor prescribes Quaaludes to a known drug addict, it is foreseeable that the addict may drive an automobile under the influence and cause injury to innocent third parties." Id. at 839-40.
The supreme court reversed our Fitzer opinion, holding that there is nothing inherently negligent about prescribing drugs to a drug addict; thus, prescribing a controlled substance, alone, is not enough to render a physician liable to third parties. See Forlaw v. Fitzer, 456 So.2d 432, 434 (Fla.1984). Rather, in order to impose liability, it must be shown that the doctor acted in bad faith or beyond the scope of his practice in prescribing the drug. Id. at 435.
Eleven years later, the supreme court issued Pate v. Threlkel, 661 So.2d 278 (Fla. 1995). In that case, the adult child of a patient who had been diagnosed with a genetically transferable disease brought a medical malpractice action against her mother's doctor alleging that he was negligent in failing to warn the patient that her condition was genetically transferrable and her children should be tested. Id. at 278. The court concluded, "when the prevailing standard of care creates a duty that is obviously for the benefit of certain identified third parties and the physician knows of the existence of those third parties, then the physician's duty runs to those third parties." Id. at 282.
In Werner v. Varner, Stafford & Seaman, P.A., 659 So.2d 1308 (Fla. 4th DCA 1995), this court applied Pate to preclude a suit against a doctor by a motorist who was injured when the doctor's patient, an epileptic, collided with the motorist after taking an anti-epileptic medication and experiencing a seizure. The complaint alleged that the doctor was negligent in failing to warn his patient that he should not drive while under the influence of the medication. This court framed the issue as "whether a physician owes a duty to persons not within the physician/patient relationship," and held as follows:
We are not unmindful of the foreign cases cited by the Werners which have *1173 held physicians liable in like or similar circumstances to those presented in the case under review. See Duvall v. Goldin, 139 Mich.App. 342, 362 N.W.2d 275 (1984); Freese v. Lemon [Lemmon], 210 N.W.2d 576 (Iowa 1973); Myers v. Quesenberry, 144 Cal.App.3d 888, 193 Cal. Rptr. 733 (1983); Gooden v. Tips, 651 S.W.2d 364 (Tex.Ct.App.1983). However, we must follow the recent supreme court pronouncement in Pate. Although Pate seemingly relaxes the no privity/no liability rule, it cannot operate to save the Werners' amended complaint. In Pate, the supreme court specifically limited the physician's duty to known and identifiable third parties as the patient and plaintiff were mother and child. In the instant case, the Werners were neither known nor identifiable to Dr. Bezner and were merely members of the driving public at large.
Id. at 1310-1311.
Pompano urges us to apply Pate and Werner and affirm the summary final judgment on the basis that the decedents in this case were merely unidentifiable third parties, "members of the driving public at large" and, thus, Pompano owed them no duty. We disagree with that analysis, however, finding that it overlooks the distinctions between the facts in this case and those in Pate and Werner and ignores the law established by the supreme court in Fitzer. We agree that the decedents in this case were not identifiable third parties, but the analysis does not stop there. As the court instructed in Fitzer, a duty may still be imposed if there is a showing that the doctor either acted in bad faith or beyond the scope of his practice in administering the methadone.
This case is unlike a mere failure to warn case where the doctor prescribes a medication which might have certain effects under certain circumstances at some future time. In those situations, whether the patient takes the medication and then drives is beyond the doctor's control. In fact, whether the patient consumes the medication at all is beyond the doctor's control. Thus, imposition of a duty to unidentifiable third parties under those circumstances would create a zone of risk which would be impossible to define.
On the other hand, this case presents a situation in which the variables are, or should be, known to the doctor or health care provider at the time the drug is administered, and the effects are immediate. When one administers a drug which, when combined with other drugs or alcohol, may severely impair the patient, the doctor's failure to take the proper precautions (i.e., verify whether the patient is already under the influence of another drug) is an affirmative act which creates the risk that unidentifiable third parties might be injured. Under these circumstances, there is, most certainly, a duty to unidentifiable third parties who may be injured as a result.
In this case, there is a factual question, based on the evidence presented, as to whether Reutlinger was impaired. If appellant were ultimately able to prove Reutlinger's impairment at the time the methadone was administered to him, that showing would, according to Fitzer, give rise to liability to third parties based on bad faith or conduct outside the scope of the doctor's or clinic's practice. Under these circumstances, it could certainly be anticipated that a patient in such a condition would immediately drive away from the clinic and have an accident in which unknown third parties would be injured.
Several of these issues present factual questions, not appropriately disposed of by way of summary judgment. Thus, we reverse *1174 the final judgment and remand for further proceedings.
REVERSED AND REMANDED.
GROSS, J., and MAASS, ELIZABETH T., Associate Judge, concur.