Eugene MOORE, Plaintiff,

v.

WESTERN CAROLINA TREATMENT CENTER, INC., Defendant.

No. 2:12-CV-394

United States District Court,
E.D. Tennessee,
at Greeneville.

Filed February 17, 2016

Robert Dwight Bates, II, Anthony A. Seaton, Law Offices of Tony Seaton, PLLC, Johnson City, TN, for Plaintiff.

David A. Draper, Shannon F. Van Tol, Lewis, Thomason, King, Krieg & Waldrop, P.C., Knoxville, TN, for Defendant.

## MEMORANDUM OPINION AND ORDER

### J. RONNIE GREER, UNITED STATES DISTRICT JUDGE

The defendant, Western Carolina Treatment Center, Inc. ("Western Carolina"), has filed two Motions for Summary Judgment, [Docs. 45, 89]. The first motion for summary judgment, [Doc. 45], has already been denied, [Doc. 237]. The plaintiff, Eugene Moore ("Moore"), has responded to the second motion for summary judgment, [Doc. 117], and Western Carolina has replied, [Doc. 125]. Following additional discovery, Moore supplemented his response, [Doc. 135], and Western Carolina supplemented its reply, [Doc. 143]. The parties have filed additional supplements, [Docs. 212, 214, 227], and the Court considered these when addressing this motion. This matter is ripe for review. For the reasons that follow, Western Carolina's second motion for summary judgment, [Doc. 89], is DENIED IN PART and GRANTED IN PART.

## I. FACTS

In his amended complaint, Moore alleges that Western Carolina "administered/provided methadone or other intoxicant to ... Richardson and allowed him to drive." [Doc. 65 ¶ 61]. Moore alleges that Western Carolina owed the following duties to him, a member of the driving-public: (1) conduct a drug screen urinalysis on the date of the accident, [Doc. 65 ¶ 64]; (2) institute and follow policy and procedure for patient management while providing methadone treatment, [Doc. 65 ¶ 66]; (3) perform a "proper screening" of Rich-

ardson on the date of the accident, [Doc. 65 ¶ 68]; (4) not prescribe methadone or other intoxicants to patients that were intoxicated or otherwise impaired, [Doc. 65 ¶ 70]; (5) not permit patients or known abusers of intoxicants to drive an automobile after administering or providing patients with methadone or another intoxicant, [Doc. 65 ¶ 72]; and (6) warn patients of the dangers of driving an automobile after being administered or provided methadone or another intoxicant, [Doc. 65 ¶ 74].

The crux of plaintiff's case is based on an allegation that Western Carolina owed and breached a duty to the plaintiff by failing to warn Richardson of the potential effects of methadone on his ability to safely operate a motor vehicle. Richardson has submitted two affidavits in this matter. In the first affidavit, Richardson avers that he was not warned on the day of the accident or during his orientation of the potential effects of methadone on his ability to safely operate a car. However, in his second affidavit, Richardson avers that after reviewing his orientation packet, something he had not done prior to signing the first affidavit, he saw that he had initialed a statement warning him of such a danger and that he would have received this warning during his orientation at the center. Further, Amy Schroyer, Richardson's counselor at the center, stated that it was her practice to review the potential side effects of taking methadone on a patient's ability to drive during orientation and would reorient the patient with such warnings upon an increase in dosage. Ms. Schroyer had no specific notes that she warned Richardson of potential side effects in her chart except for the orientation page where Richardson initialed by the warning.

The undisputed facts here show that Richardson received his daily dose of me-

thadone from Western Carolina on the day of the accident. Richardson then met for about forty minutes with his counselor, Amy Shroyer, who identified no signs of impairment and noted the same on his chart. Western Carolina has a policy and protocol in place for their staff, who are trained on signs of impairment, to look for signs of impairment or intoxication both before and after a dose of methadone is administered. This policy also requires that if signs of intoxication are exhibited by a patient the staff are required to take certain steps to confirm that a patient is intoxicated and to arrange for alternate transportation.

Moore has argued multiple times in many filings that this is not a medical malpractice suit and agrees that he has not complied with the medical malpractice procedural hurdles, such as pre-suit notice or a good faith certificate. The plaintiff admits that he has no expert to testify regarding the proper standard of care of a physician or methadone treatment center. Additionally, the defendant has provided an affidavit from Dr. Andrew Saxon, an expert on addiction treatment, who avers that Western Carolina breached no standard of care in its treatment of Richardson. The plaintiff has submitted the Tennessee Bureau of Investigation's "Official Toxicology Report" showing that Richardson tested positive for methadone, among other substances, in the hours following the accident. Plaintiffs have also submitted a letter From Dr. Kenneth Ferslew, a toxicology expert who has opined that the combination of drugs in Richardson's system at the time of the crash, while all within therapeutic levels, contributed to his "misoperation" of the motor vehicle at the time of the crash.

## II. STANDARD OF REVIEW

Summary judgment is proper where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322, 106 S.Ct. 2548. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *McClain v. Ontario, Ltd.*, 244 F.3d 797, 800 (6th Cir. 2000). This Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505; *Nat'l Satellite Sports*, 253 F.3d at 907. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. If this Court concludes that a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented, it may enter a

summary judgment. *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

The party opposing a Rule 56 motion may not simply rest on the mere allegations or denials contained in the party's pleadings. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Instead, an opposing party must affirmatively present competent evidence sufficient to establish a genuine issue of material fact necessitating the trial of that issue. *Id.* Merely alleging that a factual dispute exists cannot defeat a properly supported motion for summary judgment. *Id.* A genuine issue for trial is not established by evidence that is merely colorable, or by factual disputes that are irrelevant or unnecessary. *Id.* at 248–52, 106 S.Ct. 2505.

## III. ANALYSIS

In their second motion for summary judgment, Western Carolina argues that there are no genuine issues of fact relating to the plaintiff's "inability to meet his burdens of proof," arguing that they owe no duty to the plaintiff, breached no duty, and there is no proof that they caused the plaintiff's damages. [Doc. 89 at 1]. Western Carolina also argues that the undisputed facts show that Moore has not complied with either the Tennessee or North Carolina procedural prerequisites in order to bring a medical malpractice suit. [*Id.*] Western Carolina further argues that no claim for punitive damages may survive. Each argument will be addressed in turn.

### a. Duty Owed

 Western Carolina argues that it owed no duty of care to the plaintiff for any negligence claim for any of the duties alleged above. In order for the plaintiff to prevail on an ordinary negligence claim, he must show that the defendant owed him a duty. *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 355 (Tenn. 2008).

"The existence or nonexistence of a duty owed to the plaintiff by the defendant is a question of law to be determined by the court. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). All persons, including prescribing physicians, have a duty to use reasonable care to "refrain from conduct that will foreseeably cause injury to others" and protect against unreasonable risks of harm. *Burroughs v. Magee*, 118 S.W.3d 323, 328 (Tenn. 2003) (citing *Staples*, 15 S.W.3d at 89). Tennessee courts have held that a physician may owe a duty of care to a non-patient third party if the physician's negligence "causes reasonably foreseeable injuries to the third party. *Estate of Amos v. Vanderbilt Univ.*, 62 S.W.3d 133, 138 (Tenn. 2001).

 A "balancing approach" is used to determine whether a duty is owed in a particular circumstance by determining if the foreseeable probability and gravity of harm of the defendant's conduct outweigh the burden on the defendant to engage in alternative conduct that would prevent the harm. *Id.* at 329 (citing *Turner v. Jordan*, 957 S.W.2d 815, 818 (Tenn. 1997); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)). The factors include: (1) foreseeable probability of the harm or injury occurring; (2) magnitude of the potential harm; (3) importance or social value of the defendant's conduct; (4) usefulness of the conduct to the defendant; (5) feasibility of alternative, safer conduct; (6) the relative costs and burden associated with that conduct; (7) the relative usefulness of safer conduct; and (8) the relative safety of the alternative conduct. *Id.* Public policy is also an important consideration. *McCall*, 913 S.W.2d at 153.

### 1. Duty to Warn

The Tennessee Supreme Court case of *Burroughs v. Magee* is directly on point with some of the alleged duties owed by

Western Carolina to Moore as a member of the driving public. In *Burroughs*, the plaintiff sued in negligence for injuries sustained in a car accident. *Id.* at 324–25. The plaintiff sued the physician of the driver of the other car, alleging that the physician was negligent in prescribing two medications to the patient and for failing to warn the patient of the risks of driving while under the influence of those two prescribed medications. *Id.* The two medications prescribed, a muscle relaxant and a barbiturate, act as depressants and "can affect a patient's ability to safely operate a motor vehicle." *Id.* at 325.

The Tennessee Supreme Court analyzed the factors listed above and held that "based on our balancing of the factors to be considered in resolving duty issues, we hold that under the facts of this case [the prescribing physician] owed a duty of care [to the plaintiff, a member of the driving public] to warn [the patient] of the possible adverse effect of the two prescribed drugs on his ability to safely operate a motor vehicle." *Id.* at 333. This Court finds that the facts of *Burroughs* are very similar to the facts of this case and that Western Carolina owed a duty to Moore, a member of the driving public, to warn Mr. Richardson of the possible effects of methadone on his driving ability. A brief review of the factors as they apply to this case is warranted here, although many of the factors analyzed by the Tennessee Supreme Court apply equally in this case.

■ The first factor is the foreseeable probability of the harm or injury occurring. Important to the foreseeability factor is the manner of the injury. *Pittman v. Upjohn Co.*, 890 S.W.2d 425, 433 (Tenn. 1994) (holding that, where a patient's adult grandson took some of the patient's diabetes medication and suffered a severe reaction, injury was not reasonably foreseeable). The defendant argues that this factor is where this case is distinguishable

from *Burroughs*. The *Burroughs* court found the injury foreseeable, at a minimum, because there was a note in the patient's chart from two years prior where a different treating physician noted "I don't feel that I should prescribe this medication to him to continue taking while driving a rig on the highways across the country." *Burroughs*, 118 S.W.3d at 332. The *Burroughs* court held that the patients "medical chart clearly indicates that [the patient] could be endangering himself and others by driving while taking [the medication], and that note refuses any argument that the injury to the plaintiff . . . w[as] not foreseeable." *Id.* The defendant argues that because there was no such glaring note or indication of potential harm to members of the driving public in Richardson's chart, that Moore's injury was not foreseeable. [Doc. 91 at 10].

The Court has already noted, [Doc. 31], regarding the foreseeability of the defendant's actions causing injury within the state of Tennessee, that "W[estern Carolina] intentionally provided an intoxicating narcotic to a known Tennessee resident under circumstances where it was known or should have been known that he would operate a motor vehicle in Tennessee, placing Tennessee residents at risk of the very type of motor vehicle accident alleged in the case." Here, Western Carolina not only prescribed but administered methadone, a narcotic drug that has the potential to interfere with a person's motor skills and reaction time, to a patient that it knew resided out of state and would have to drive an automobile away from their center into traffic with other members of the motoring public. Although there is not a prior note in the defendant's chart where a prior treating physician noted concerns about the patient driving with particular drugs in his system, the foreseeability is no less present. Here, Western Carolina had been treating Richardson for many

months, and treated Richardson often, all the while knowing that after receiving his daily dose of methadone that he would immediately, or soon thereafter, get into his vehicle and drive on the public highways. There was a foreseeable probability that Richardson could injure other members of the driving public after receiving his dose of methadone at Western Carolina's treatment center.

■ The second factor is the possible magnitude of the potential harm or injury. There is no need to analyze this any more than the Supreme Court of Tennessee did in *Burroughs* as it applies equally here.

> We need look no further than the all too common example of DUI-related accidents to appreciate the possible magnitude of harm or injury that can result from an impaired driver. Deaths and serious injuries tragically occur every day as a result of drivers who are operating motor vehicles on our roads and highways.

*Burroughs*, 118 S.W.3d at 332. The possible magnitude of the potential harm is significant here.

■ The third factor is the importance or social value of the defendant's activity. While the plaintiff argues that the importance of Western Carolina's business is "questionable at best" and argues that Western Carolina does nothing more than transition an opiate-addicted individual off of opiates and onto methadone without the intention to ever wean them off of methadone. [Doc. 117 at 8]. This Court does not agree with plaintiff's characterization and shading of the deposition testimony. From reading the deposition of Western Carolina's Program Director, Brian Goddlett, in context, it is apparent that Goddlett stated that the success or goal is determined on a patient by patient basis. [Goddlett Depo at 25-26 (Q. So the goal is not to get folks ultimately off of methadone? A. Again, that depends on the individuals.

For some folks, that is the goal.)] Mr. Goddlett testified that some patients who have a relatively brief history of addiction come to the clinic to stabilize with methadone and eventually wean off of the medication totally. [*Id.*] For others who have an extensive history of addiction and use, their brain chemistry may be permanently damaged such that medication is required for the rest of their life and it is not possible to effectively wean then off of methadone. [*Id.*] Medical services of any sort provide important value to our society. Society benefits from the availability of physicians who treat patients in an effort to treat addiction and the court will give weight to the important value of medical services when determining if a duty exists and the effect that such a duty will have on the delivery of those services.

■ The fourth factor is the usefulness of the conduct, here failing to warn, to the defendant. Similar to *Burroughs*, the Court does not see any reason why failing to warn a patient has any usefulness to the defendant medical provider. *Id.* Besides saving the physician or counselor a small amount of time, actually giving the warning of the potential dangers of driving would seem to be more useful to the physician as it may prevent a suit against the physician or medical center. *See id.* ("There might be a de minimis benefit to [a physician] not providing such warning in that it might save him a small amount of time ... however, it is probably more 'useful' to ... *give* appropriate warning to his patient to minimize the chance of a subsequent [lawsuit] ....") Western Carolina's alleged failure to warn in this case does not appear to be useful to anyone, even to Western Carolina itself.

■ The fifth factor is the feasibility of an alternative, safer conduct. The alternative conduct would be simply to warn a patient of potential side effects or

dangers. *See id.* This poses only a *de minimis* burden on Western Carolina or its physicians and counselors. The sixth, seventh, and eighth factors relate to the costs, usefulness, and safety of the alternative conduct. The costs of warning a patient of potential side effects are not much, merely requiring an additional few seconds or minutes spent with the patient. However, the usefulness of those extra few minutes is great, potentially preventing injuries to the patient and the motoring public. There is no question that giving a warning is safe conduct and would not endanger the physician or healthcare provider in any way.

 Based upon *Burroughs* and this Court's weighing of the factors needed to determine whether a duty to warn arises under these facts, the Court holds that Western Carolina did have a duty to warn Richardson of the potential side effects of methadone on his ability to safely drive an automobile. The defendant's motion for summary judgment as it relates to that particular duty is denied.

## 2. Duty Not to Prescribe Methadone; Duty to Conduct a Urinalysis prior to Prescribing Methadone

 The plaintiff alleges that Western Carolina had a duty not to prescribe methadone to Richardson when he was intoxicated or otherwise impaired. [Doc. 65 ¶ 70]. To determine if Western Carolina owed this duty to the plaintiff, a member of the driving public, another balancing of the factors discussed above is required. The foreseeable probability of injury or harm analysis is the same as above and the Court finds that such an injury was foreseeable. However, foreseeability is not dispositive on the issue. *Burroughs*, 118 S.W.3d at 333. Here, especially when considering the duty of a physician in making his medical decisions of whether or not to prescribe medication, the other factors re-lating to public policy are especially important and outweigh the foreseeability factor.

In *Burroughs*, the Tennessee Supreme Court has already considered the public policy implications of imposing a duty to the non-patient public on a physician when making medical, prescribing decisions. *Id.* at 334–35. The court noted that a "physician's first loyalty must be to his patient." *Id.* at 334 (quoting *Webb v. Jarvis*, 575 N.E.2d 992, 997 (Ind. 1991)). "Were we to impose a duty on a physician to consider the risk of harm to third persons before prescribing medication to a patient, we would be forcing the physician to weigh the welfare of unknown persons against the welfare of his patient. Such an imposition is unacceptable." *Id.* The *Burroughs* court also looked to the Hawaii Supreme Court which had expressed similar concerns about a physician having to consider the potential liability of unknown third-party plaintiffs on top of the "complicated array of considerations" that physicians already face when making such decisions. *Id.* at 334–335 (quoting *McKenzie v. Hawaii Permanente Med. Group, Inc.*, 47 P.3d 1209, 1219 (2002)).

The public policy considerations stated in *Webb* and in *McKenzie* are relevant to several of the factors we consider in resolving duty issues. First, "the importance or social value of the activity engaged in by defendant" is substantial. Second, the public policy considerations are relevant to the factor concerning "the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of the alternative conduct." In the context of making prescription decisions for individual patients (as opposed to warning a patient of adverse affects [sic] of a prescription), "alternative, safer conduct" is not so feasible. Moreover, the "relative costs and bur-

dens" of any such alternative conduct could be high. As the Indiana and Hawaii courts pointed out, imposing a duty on a physician to consider third parties when making prescribing decisions could compromise the physician's care of individual patients.

*Burroughs*, 118 S.W.3d at 335.

These alleged duties fall squarely within the physician's medical decision of whether and when to prescribe and administer a medication. Following *Burroughs*, this Court holds that Western Carolina owed no duty to the plaintiff when it came to prescribing Richardson methadone. The defendant's motion for summary judgment as to this duty is granted.

■ Additionally, the plaintiffs have on numerous occasions stated that this is not a medical malpractice case, have not complied with any of the procedural hurdles of a medical malpractice case, and do not have any expert testimony regarding the standard of care relating to opioid addiction treatment. The plaintiff relies on the Florida Court of Appeals case of *Cheeks v. Dorsey* for the proposition that Western Carolina owed a duty to the driving public, including Moore, to conduct a urinalysis prior to prescribing methadone because of methadone's potential reaction with other drugs. *Cheeks v. Dorsey*, 846 So.2d 1169, 1173 (Fla. Dist. Ct. App. 2003). *Cheeks* held that

> [w]hen one administers a drug which, when combined with other drugs or alcohol, may severely impair the patient, the doctor's failure to take proper precautions (i.e., verify whether the patient is already under the influence of another drug) is an affirmative act which creates the risk that unidentifiable third parties might be injured.

*Id.* This holding is predicated on the court noting that under Florida case law, a duty to unknown or unidentifiable third parties, such as Moore, may be owed by a physi-

cian only "if there is a showing that the doctor either acted in bad faith or beyond the scope of his practice in administering methadone." *Id.* The facts that the *Cheeks* court were considering when determining if the physician owed a duty to the unidentifiable public had much more egregious issues than are presented here. In *Cheeks*, the plaintiff had admissible proof to show that the patient was likely impaired before coming to the clinic for methadone treatment and that others could observe such impairment before his dose of methadone was prescribed. *Id.* at 1171. The *Cheeks* court noted a number of facts that were important in determining if a duty existed: (1) the patient's roommate stated that he and the patient were doing drugs on the evening prior to his visit and that the patient appeared to still be impaired when he left the next morning for his visit to the clinic; (2) a friend of the patient saw him at the clinic and noticed that his eyes were red and the friend told a clinic staff member of his concern that the patient was impaired that morning and noted that the patient was "disoriented and upset as if he had been doing cocaine or amphetamines;" and (3) the state trooper who responded to the accident observed the patient and noted that his pupils were dilated even while looking directly at the sun and that the patient appeared to be "spaced out." *Id.* There are not even remotely similar facts in this case that would persuade the Court that it should follow *Cheeks* and hold differently than *Burroughs*.

Arguing that a physician had a duty to a non-patient third party when making his medical decisions, including whether to conduct a urinalysis prior to prescribing and the actual prescribing of medication itself, "smacks of deviation" from plaintiff's multiple assertions that this is not a medical malpractice case, as has already been stated by Magistrate Judge Corker. These decisions fit within the "standard of care"

required by physicians making such medical determinations. Plaintiffs have no admissible proof regarding the standard of care for methadone treatment and thus summary judgment must be granted in favor of the defendant on these duties.

### 3. Duty to Prevent from Driving

▮▮▮▮ Under Tennessee law, a defendant does not owe a duty of care to protect a plaintiff from the conduct of third parties. *Turner v. Jordan*, 957 S.W.2d 815, 818 (Tenn. 1997). However, a duty may exist to protect third persons from someone's conduct if the defendant "stands in a special relationship to either the person who is the source of the danger, or the person who is foreseeably at risk from the danger." *Id.* (quoting *Bradshaw v. Daniel*, 854 S.W.2d 865, 871 (Tenn. 1993) (citing Restatement (Second) of Torts § 315 (1964))). The special relationship requirement has, under Tennessee law, included that of a physician and patient. *Id.* at 818–19. However, the *Turner* case is easily distinguishable from the facts at issue here. In *Turner*, the Tennessee Supreme Court held that a psychiatrist had a duty to protect a nurse in a psychiatric hospital unit from the violent acts of his patient who posed a serious threat of danger. *Id.* at 819. However, that patient had already informed the psychiatrist of threats to specific persons, he knew of the patient's prior violent conduct while hospitalized, including an attack on a member of the hospital staff, and the psychiatrist had described the patient as "aggressive, grandiose, intimidating, combative, and dangerous." *Id.* at 820. Additionally, the court described this analysis as it applies to "a special relationship, that is, the psychiatrist/patient relationship." *Id.*

▮▮▮▮ In its motion for summary judgment, the defendant relies on out-of-state cases to show that a physician does not owe a duty to the motoring public to prevent a patient from driving after release.

The plaintiff cites no Tennessee case law, or any case law for that matter, that holds a physician to a duty to prevent a patient from driving after being given medication that may inhibit his ability to safely operate a motor vehicle. Instead, the plaintiff merely argues that Western Carolina's own internal policy requiring staff to secure alternative transportation for a patient they find appearing to be intoxicated after a methadone administration creates such a duty. Similarly, the plaintiff has cited no case law to support his contention that a physician's own policy creates such a legal duty and stands instead only on the assertion.

Courts in other jurisdictions have held that a physician or hospital's duty regarding prescribing or warning of effects of medications does not, absent more specific circumstances similar to those of *Turner*, require the physician to prevent the patient from driving or take control of the patient in some manner. *See Hoehn v. United States*, 217 F.Supp.2d 39, 47–48 (D.D.C. 2002), *Young v. Gastro–Intestinal Ctr., Inc.*, 361 Ark. 209, 205 S.W.3d 741, 747 (Ark. 2005) (holding that once a warning of a medication's side effects had been given that "patients must then bear the responsibility for the consequences of following, or not following such advice[,]"), *Myers v. Quesenberry*, 144 Cal.App.3d 888, 894 n.3, 193 Cal.Rptr. 733 (1983), *Shortnacy v. N. Atlanta Internal Med., P.C.*, 252 Ga.App. 321, 556 S.E.2d 209, 214 (2001), *Leavitt v. Brockton Hosp., Inc.*, 454 Mass. 37, 907 N.E.2d 213, 217 (2009), *Wilschinsky v. Medina*, 108 N.M. 511, 775 P.2d 713, 718 (1989) (holding that the duty owed by a physician to the general public for injuries caused by a medicated individual upon release would be discharged by a warning), *Praesel v. Johnson*, 967 S.W.2d 391, 398 (Texas 1998)( [t]he responsibility for safe operation of a vehicle should remain primarily with the driver who is capable of

ascertaining whether it is lawful to continue to drive[,]"), *Gooden v. Tips*, 651 S.W.2d 364, 370 (Texas Ct. App. 1983).

The cases cited by the defendant, while not binding, are very persuasive in determining that Western Carolina owed no duty to Moore to control Richardson or prevent him from driving. There does not appear to be a similar "special relationship" between Western Carolina, a clinic providing methadone treatment and counseling, and its patient as there was between a psychiatrist and a mentally ill patient in *Turner*. Additionally, unlike *Turner*, Western Carolina had no indicators that Richardson, a patient who had been coming to the clinic for methadone treatment for years, who participated in a forty-minute counseling session following taking his daily dose of methadone, and who did not appear to the trained professionals to be impaired at the clinic, would cause an injury hours later. While the Court has found that such an accident was foreseeable in general, this foreseeability does not rise to the level of creating a legal duty to the plaintiff to control Richardson or prevent him from driving away from the clinic.

Even if the Court were to find that Western Carolina's own policies to secure alternative transportation for patients who were found to be impaired at the center created a duty, there is no genuine dispute of fact as to whether Western Carolina failed to follow their policy. The testimony of Ms. Schroyer is undisputed in that she saw, in a forty-minute counseling session after Richardson had taken methadone, that he appeared normal and not intoxicated. Plaintiff's allegations and arguments that Ms. Schroyer, a licensed addiction counselor, somehow falsified her records or did not actually observe Richardson or evaluate his demeanor for signs of intoxication on the date of the accident are unsupported in the record and nothing more than arguments and conjecture. Defendant's motion for summary judgment as to this alleged duty is granted

### 4. Duty to Institute and Follow Procedures; Duty to Perform Proper Screening

These duties that are alleged are merely restatements of a physician's duty to follow the proper standard of care. The defendant argues in its motion that these duties, along with the alleged duty not to prescribe methadone and to conduct a urinalysis, fall into the category of medical decisions made by the treating physician. The plaintiff does not appear to address these specifically in his response. While this court is not entirely persuaded that these particular alleged duties are in fact medical decisions, the Court does find that these fall within the purview of a physician's standard of care. Because this is not a medical malpractice case, and because the plaintiff has presented no admissible proof beyond his mere allegation of deviation from the proper standard of care, these claims are not viable. Defendant's motion for summary judgment as to these particular duties is granted.

### b. Breach

■ The only remaining duty owed by Western Carolina to Moore, a member of the motoring public, under these facts is a duty to warn Richardson of the possible side effects of his methadone dose on his ability to safely operate a motor vehicle. Where there is no duty, there can be no breach; where there is no breach, there can be no negligence liability. Therefore, the court must determine whether there is a genuine issue of material fact as it relates to Western Carolina either giving such a warning or failing to give such a warning to Richardson. This Court finds that there is a genuine dispute as to whether these warnings occurred.

Richardson himself has signed two affidavits under oath. The first, filed by the plaintiff opposing summary judgment, states that he was not given any warning regarding his ability to drive on the date of the accident or on any date before that. Richardson's second affidavit, filed by the defendant, states that he was mistaken and was in fact given a warning during his orientation. The Sixth Circuit has held that a party may not create a genuine issue of material fact on summary judgment by filing a subsequent affidavit that contradicts his prior testimony. *Biechele v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir. 1984). The Court may, in its discretion, disregard a "directly contradictory" affidavit unless the proponent provides a persuasive justification for the contradiction. *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006) (citing *Miller v. A.H. Robins, Co.*, 766 F.2d 1102, 1104 (7th Cir. 1985)).

Unlike in *Biechele*, the defendant here is attempting to show that a material fact is not in dispute based on a subsequent, contradictory affidavit. The subsequent affidavit states a reasonable explanation for the conflict, stating that Richardson did not remember the warning given until he was shown a copy of his initialed orientation material. However, even disregarding Mr. Richardson's conflicting affidavits, the record still contains a dispute of fact as to whether Mr. Richardson was warned by the defendant. Ms. Schroyer states that she does not have a specific notation in her chart that she warned Mr. Richardson of the effects of methadone, other than a copy of the orientation materials. Further, Ms. Schroyer states she would have "reoriented" Mr. Richardson upon an increase in his dosage, however, there is not a notation in her chart that indicates such a reorientation or warning was given at that time. Such evidence is sufficient to create a genuine issue of fact. Therefore, summary judgment cannot be granted as it relates to Western Carolina's duty to warn Richardson of the potential effects of methadone on his ability to safely operate a motor vehicle.

### c. Causation and Damages

In its motion for summary judgment, the defendant argues that the plaintiff has no admissible proof that Western Carolina's failure to warn Richardson of the potential side effects of methadone on his driving ability caused the plaintiff's injuries. Western Carolina argues that because Richardson did not appear intoxicated at the center, the plaintiff cannot prove that Western Carolina's alleged failure to warn of methadone side effects after he took the medication caused Richardson to collide with Moore's vehicle and cause his injuries. The plaintiff disagrees and argues that the letter submitted by expert toxicologist, Dr. Ferslew, is sufficient to at least raise a genuine issue of fact. The Court agrees with the plaintiff on this point. While Dr. Ferslew's letter is not dispositive on the matter in favor of the plaintiff, it does present a factual issue for the jury to decide whether Western Carolina's failure to warn Richardson of the potential effects of methadone on his driving ability caused Moore's injuries.

### d. Punitive Damages

In its motion for summary judgment, the defendant argues that under Tennessee law, it is not liable as a matter of law for punitive damages. However, in a motion-*in-limine* before Magistrate Judge Corker, the defendant moved the court to apply North Carolina law to the issue of the plaintiff's punitive damages claim and to bifurcate the trial so that the financial condition of the defendant would not be presented to the jury in the liability phase, [Doc. 170]. The plaintiff responded and opposed the application of North Carolina

law to the issue of punitive damages, [Doc. 198]. Magistrate Judge Corker heard oral argument on this motion and issued an opinion holding that the trial should be bifurcated into a liability phase and a punitive damages phase, [Doc. 242]. Additionally, Magistrate Judge Corker, after a thorough analysis, found that the purpose behind punitive damages was to punish the defendant for reprehensible conduct and that since the most significant relationship between the defendant and the occurrence was in North Carolina, North Carolina law applied to the issue of punitive damages. [Doc. 242 at 6]. The parties have not briefed the issue of whether or not summary judgment should be granted as it relates to punitive damages under North Carolina law. Therefore, the defendant's motion for summary judgment as it relates to the plaintiff's claim for punitive damages is DENIED.

### e. This is Not a Medical Malpractice Case

■ In its second motion for summary judgment, the defendant argues that the plaintff's claims should be dismissed because he has alleged negligence in the provision of medical treatment to Richardson but has failed to comply with the procedural requirements related to filing a medical malpractice[1] case. The plaintiff has stated multiple times in filings with the Court that this is "not a medical malpractice case" and readily admits that he has not complied with the procedural hurdles of a medical malpractice claim under either North Carolina or Tennessee law. The plaintiff has not provided a certificate of good faith nor has he given the required notice of a medical malpractice case to the defendant prior to filing. As such, any

claim by the plaintiff that is actually a medical malpractice allegation, even if styled as ordinary negligence, is not viable and must be dismissed for failure to comply with the statutory requirements of Tenn. Code Ann. §§ 29–26–121, 122.

■ The only claim that remains following the Court's analysis of whether and what duties are owed by Western Carolina to Moore is the duty to warn Richardson of the potential side effects of methadone on his ability to safely drive a motor vehicle. Therefore, the Court will only analyze whether that particular duty may be construed as a medical malpractice claim that requires the plaintiff to comply with the statutory procedural requirements, which he admittedly has not done here.

The Tennessee Supreme Court has addressed the framework that courts should follow when distinguishing between ordinary negligence and medical malpractice in the case *Estate of French. Estate of French v. Stratford House*, 333 S.W.3d 546 (Tenn. 2011). The defendant filed a supplement to its motion, [Doc. 212], making the Court aware of a recent Tennessee Supreme Court decision, *Ellithorpe*, which held that the nuanced approach to determine the line between ordinary negligence and medical malpractice from *Estate of French* had been statutorily abrogated by the amendments to the Tennessee Civil Justice Act of 2011 ("TCJA"). *Ellithorpe v. Weismark*, 479 S.W.3d 818 (Tenn. 2015). *Ellithorpe* held that the recent amendments to the TCJA essentially overruled the *Estate of French* analysis and require the pre-suit notice and good faith certificate when alleging that a health care provider was the cause of an injury, regardless of the liability theory. 479 S.W.3d at

1. The parties argue as to whether this is a "medical malpractice" claim. The Tennessee statutes have referred to an action based on the negligent treatment of a patient as a "health care liability action" as well. *See* Tenn Code Ann. § 29–26–121. These titles are synonymous and the Court will use the term "medical malpractice" in this opinion.

827–28. The defendant goes on to argue that because the plaintiff's claim arise out of its treatment of Richardson, regardless of the theory of liability, the plaintiff was required to comply with the procedural requirements of the TCJA. The plaintiff responded to this supplement, [Doc. 214], and argues that because the 2011 amendments to the TCJA, the very amendments that *Ellithorpe* determined abrogated the nuanced approach of *Estate of French*, did not go into effect until the day after Moore's accident, this case would be determined under the pre-2011 amendment TCJA and that *Ellithorpe*'s abrogation of the nuanced approach is not applicable. The Court agrees with the plaintiff on this point. Because the accident that gave rise to the events of this suit occurred on September 30, 2011, exactly one day before the 2011 TCJA amendments were enacted, the Court will apply the *Estate of French* analysis and take a nuanced approach to determine if the remaining allegation sounds in ordinary negligence or medical malpractice.

In *Estate of French*, the Tennessee Supreme Court provided the framework to determine whether a claim arises in ordinary negligence or medical malpractice:

> When a claim alleges negligent conduct which constitutes or bears a substantial relationship to the rendition of medical treatment by a medical professional, the medical malpractice statute is applicable. Conversely, when the conduct alleged is not substantially related to the rendition of medical treatment by a medical professional, the medical malpractice statute does not apply.
>
> . . . .

Medical malpractice cases typically involve a medical diagnosis, treatment or other scientific matters. The distinction between ordinary negligence and malpractice turns on whether the acts or omissions complained of involve a matter of medical science or art requiring specialized skills not ordinarily possessed by lay persons or whether the conduct complained of can instead be assessed on the basis of common everyday experience of the trier of fact.

333 S.W.3d at 55–56 (quoting *Gunter v. Lab. Corp. of Am.*, 121 S.W.3d 636, 641 (Tenn. 2003) and *Peete v. Shelby Cnty. Health Corp.*, 938 S.W.2d 693, 696 (Tenn. Ct. App. 1996)).

■ The Tennessee Court of Appeals, in an unpublished decision, squarely decided this issue in a similar case involving a car accident allegedly caused by a methadone clinic patient's inability to safely operate a motor vehicle following his daily dose of methadone. *Mathes v. DRD Knoxville Med. Clinic.*, No. E2010–01809–COA–R3–CV, 2011 WL 1402879 (Tenn. Ct. App. April 13, 2011). That court held that allegations relating to the methadone clinic's failure to warn a patient that he should not drive following taking methadone "sound[ ] in ordinary negligence and do not bear a substantial relationship to the medical treatment [2]" of the patient. *Id.* at *6. The court held that under the nuanced analysis of *Estate of French* the claims were related to the "handling of [the patient] after he was treated and the effect such handling had on the public at-large." *Id.* Given that the allegations were of ordinary negligence and not substantially related to the treatment of the patient, the allegations

---

**2.** The court in *Mathes* also considered the alleged duties of (1) failure to determine whether the patient was impaired before allowing him to leave the clinic, (2) allowing the patient to leave while under the influence of methadone, (3) failing to monitor or supervise the patient while he was impaired, (4) failing to implement proper monitoring and supervising procedures, and (5) failure to prevent the patient from leaving the clinic while impaired, and (6) failing to provide the patient with alternative transportation.

were not subject to the medical malpractice procedural notice and certificate requirements. *Id.* The Court has no reason to hold differently here. The plaintiff's only remaining alleged duty, the duty to warn Richardson of the effects of methadone on his ability to safely operate a motor vehicle and Western Carolina's alleged breach of that duty sound in ordinary negligence under the nuanced *Estate of French* analysis. Therefore, this claim is not subject to the procedural requirements of prior notice and certificate of good faith as required by the TCJA for a medical malpractice case.

## IV. CONCLUSION

For the reasons stated above, Western Carolina's second motion for summary judgment, [Doc. 89], is DENIED IN PART and GRANTED IN PART.